RECEIVED
FILED

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

2018 JUL 17 PM 3: 54

ARCH SPECIALTY INSURANCE
CO.,

    Plaintiff,

v.                                         Case No.: 6:18-cv-1149-Orl-41DCI

BP INVESTMENT PARTNERS, LLC,
D/B/A THE M HOTEL; and MICAH
DAVID BASS, INDIVIDUALLY,

    Defendants.
_____/

## COMPLAINT

Plaintiff, Arch Specialty Insurance Co. ("Plaintiff" or "Arch"), hereby files this Complaint against Defendants, BP Investment Partners, LLC, d/b/a the M Hotel ("BPI") and Micah David Bass, individually ("Bass") (sometimes collectively, "Defendants"), and alleges as follows:

### Nature of the Action

1. This action arises from the brazen and unlawful conduct of Bass, who, through his company, BPI, owns and operates the M Hotel located at 6603 International Drive in Orlando, Florida (sometimes the "Property"). Specifically, Defendants submitted to Arch a false and fraudulent insurance claim for purported damages they falsely assert resulted from Hurricane Irma (which moved through the Orlando area on September 10-11, 2017). In reality, the "damages" for which Defendants submitted this astronomical insurance claim, to the extent not already paid, arose from, among other things, (a) the intentional and fraudulent acts and omissions of Defendants and others acting at their direction; (b) the prior and long-running

neglect and mismanagement of the insured property, and (c) the ordinary wear and tear of the premises, which have been largely unimproved and un-refurbished for several decades. In many instances, the damages sought by Defendants were simply never covered by the insurance policy described herein.

2. Defendants engaged in an extensive and well-planned presentation to Arch of bogus insurance claims that were intended to defraud Arch out of roughly $8 million of insurance proceeds. Defendants' goal was to enrich themselves at Arch's expense, and to secure funds through which Defendants could freely finance a complete renovation of the M Hotel.

3. To carry out their scheme, Defendants through their agents created false and grossly exaggerated damage estimates and damage claims, and staged a false presentation in their efforts to defraud Arch. Defendants actively concealed the actual condition of the M Hotel's roof immediately after the storm and misrepresented the extent of damages caused by the wind.

**Parties**

4. Plaintiff, Arch, is a Missouri corporation maintaining its principal place of business (i.e., its nerve center), in Jersey City, New Jersey. Arch is a citizen of Missouri and New Jersey.

5. Defendant, BPI, is a Florida limited liability company maintaining its principal place of business at 6603 International Drive, Orlando, Florida 32819. The sole member of BPI is Bass. As such, BPI is a citizen of Florida.

6. Defendant, Bass, is an adult resident of 16334 Port Dickinson Drive, Jupiter, Florida 33477. As such, Bass is a citizen of Florida.

7. At all times material hereto, Bass singularly controlled and directed all activities of BPI. Bass was a direct participant in all of BPI's affairs, and, in fact, exclusively manipulated those affairs for his own direct and indirect benefit.

### Jurisdiction, Venue and Preliminary Allegations

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship among the parties. Arch is a citizen of Missouri and New Jersey, and Defendants are each citizens of Florida.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because (a) one or more Defendants reside in this district, (b) a substantial part of the events and omissions that give rise to the claims presented herein occurred in this district, and (c) the property that is the subject of this action is located in this district.

10. All conditions precedent to the maintenance of this action have been performed, excused or waived.

11. Plaintiff has retained the law firm of Greenberg Traurig, P.A. to represent it in this action, and its obligated to pay the firm a reasonable fee for its services.

### The Subject Insurance Policy

12. On or about August 23, 2017, Arch issued to BPI Policy No. ESP 730324501, effective August 1, 2017, a copy of which is attached hereto as Exhibit "A", which provides first party property coverage for the Property, subject to its terms, conditions, limitations and exclusions (the "Policy"). Originally, BPI operated under the fictitious name "Howard Johnson," which reflected the original name of the subject motel. On or about December 1, 2015, BPI began operating under the fictitious name "The M Hotel." To reflect this "d/b/a" change, Arch issued an endorsement to the Policy, a copy of which is attached hereto as Exhibit

3

"B". The Policy and the endorsement are hereinafter collectively referred to hereafter as the "Policy."

13. BPI is the named insured under the Policy.

14. The Policy's exclusions and limitations include, among others, the following:

    a. (found at 00 EXP0100 00 08 14, in the coverage form entitled "Causes of Loss – Special Form," pages 1-14):

        1. Exclusion B.1.g(1) – flood or surface water, whether driven by wind or not (including storm surge);

        2. Exclusion B.1.g.(3) – water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

        3. Exclusion B.2.d.(1) – wear and tear;

        4. Exclusion B.2.d.(2) – rust or corrosion, decay, deterioration, hidden or latent defect or any quality in property that causes it to damage or destroy itself;

        5. Exclusion B.2.d.(4) – settling, cracking, shrinking or expansion;

        6. Exclusion B.2.f – continuous or repeated seepage or leakage of water, or the presence of condensation or humidity, moisture or vapor, that occurs over a period of 14 days or more;

        7. Exclusion B.2.h. – dishonest or criminal acts of the insured or anyone to whom the insured entrusted the property for any purpose;

        8. Exclusion B.2.j. – rain to personal property in the open;

        9. Exclusion B.3.c.(4) – faulty, inadequate or defective maintenance; and

        10. Limitation C.1.c.(1) – the wind driven rain limitation, which requires that the building "first sustains damage by a Covered Cause of Loss to its roof or walls through which the rain" enters.

    b. (found at 00 EXP0003 00 08 14, in the Endorsement entitled "Exclusion and Limited Additional Coverage for Fungus," pages 1-3 [which modifies the above]):

        1. Section A. – EXCLUSION – "Fungus", Wet Rot, Dry Rot and Bacteria – Arch will not pay for loss or damage caused directly or

4

indirectly by the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence of the loss.

15. In addition, the Policy – in the coverage form found at 00 EXP0101 00 08 14 and entitled "Commercial Property Conditions," at Section A., "Concealment, Misrepresentation or Fraud," [see pages 1 of 2] – voids any coverage in the event of the insured's concealment, misrepresentation or fraud. The section provides as follows:

> This Coverage Part is void in any case of fraud by you as it relates to this Coverage Part at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:
>
> 1. This Coverage Part;
>
> 2. The Covered Property;
>
> 3. Your interest in the Covered Property; or
>
> 4. A claim under this Coverage Part.

16. Further, in presenting a claim, the Policy – in the coverage form found at 00 EXP0092 00 04 16 and entitled "Building and Personal Property Coverage Form," at Section E.3., "Loss Conditions / Duties in the Event of Loss or Damage [see pages 13-15 of 22] – requires the insured to comply with certain affirmative duties. These affirmative duties include, without limitation (a) taking all reasonable steps to protect the covered property from further damage; (b) permitting Arch to inspect the Property for the purpose of proving the loss or damage; (c) permitting Arch to take samples of damaged and undamaged property for inspection, testing and analysis; (d) permitting Arch to examine the insured's books and records, and to make copies of same; (e) cooperating with Arch in the investigation or settlement of any claim; and (f) permitting an examination under oath.

17. As described in greater detail below, under the terms, conditions, exclusions and

limitations of the Policy – including, but not limited to, the concealment, misrepresentation or fraud provision – BPI is not entitled to recover from Arch any additional insurance proceeds.

### The M Hotel

18. The M Hotel was built in 1972, and originally operated as a Howard Johnson's motel.

19. The facility – consistent with the typical Howard Johnson's footprint – consists of five (5) buildings located on approximately three (3) acres of land: three (3) three-story structures that house approximately 180 guest rooms (and identified by BPI as Buildings A, B and C, respectively); a one-story structure used as a nightclub and bar intended to serve M Hotel patrons; and a one-story structure used as the main lobby, carport canopy, and guest drop-off area.

20. The facility also includes a swimming pool, pool deck, and exterior bar area.

21. The facility is currently over 45 years old, and was used historically as a moderate-rate and high-traffic motel catering to the Central Florida tourism market. As the hotel/motel offerings in Central Florida expanded greatly between the 1980s and today – and with many moderately-priced hotels becoming available near or within local tourist attractions – the facility became a worn, outdated and marginally-maintained property that catered mostly to a cost-conscious clientele. When BPI purchased the Property in July 2010, the facility was essentially worn out from years of prior hard use, with minimal and inconsistent refurbishment or reinvestment.

22. During the time that BPI owned and operated the Property, BPI did very little to change its sagging complexion. In 2015, the M Hotel was repurposed as a hotel/nightclub catering to the LGBTQ market. Other than making some cosmetic alterations around 2015, BPI

invested little to address the significant wear and tear that the Property endured over the prior 40+ years.

### Pre-Existing Roof/Leakage Problems

23. Among other things, but without limitation, the roof on the M Hotel had never been fully replaced during its 45-year existence. The ordinary lifespan of a commercial roof in Florida is far less than 45 years. Instead, only stop-gap patchwork repairs were made as the roof gradually and further deteriorated over time. By way of example, at the time Hurricane Irma passed through Orlando – and consistent with the M Hotel's lack of general maintenance – unsightly weeds and vegetation were growing on the roof of the M Hotel.

24. As a further example, at the time Hurricane Irma passed through Orlando – and consistent with M Hotel's lack of general maintenance – there were indications of long-term water damage along the front exterior walls of the hotel guest rooms due to gaps and openings, including around the windows and individual room "PTAC" air conditioning units.

### Documented Complaints That Pre-Dated the Storm

25. Between 2015 and 2017, the entire M Hotel continued to gradually and further deteriorate, all without any significant remediation by BPI or Bass. Not surprisingly, the guests of the M Hotel during this period – *and prior to the arrival of Hurricane Irma* – were underwhelmed with their experiences at the facility. Guests of the M Hotel made documented complaints to the Florida Attorney General's Office, and/or on hotel-booking websites, concerning:

    a. mold and mildew issues in the guest rooms;

    b. electrical problems and failures in the guest rooms;

    c. overflows from the swimming pool running into guest rooms;

    d.    wet floors throughout the facility because of drainage from the air conditioning units;

    e.    general filth throughout the facility; and

    f.    roach infestation throughout the facility.

26. In short, long prior to the arrival of Hurricane Irma, the M Hotel was in subpar condition, and had a myriad of serious pre-hurricane problems and failures that owed exclusively to (a) wear and tear; (b) little or no maintenance or repairs made by Defendants; (c) improper management by Defendants; and (d) inadequate capital investment by Defendants.

### **Hurricane Irma**

27. Hurricane Irma first made landfall in Florida on Sunday, September 10, 2017, at Cudjoe Key, Florida. At the time of that initial impact – some 350+ miles south of Orlando – the storm had maximum sustained winds of approximately 115 MPH. Once inland, Hurricane Irma weakened to a Category 2 storm, and then a Category 1 storm as it approached the greater Orlando metropolitan area.

28. In the International Drive corridor of Orlando – where the M Hotel is located – Hurricane Irma presented maximum surface winds of approximately 60-70 MPH, with occasional gusts being slightly higher. The rainfall total in that area was approximately 7-10 inches. The center of Hurricane Irma never moved over the Orlando metropolitan area, and it at all times remained considerably west of Orlando.

29. The primary impacts of Hurricane Irma in the greater Orlando area were generally limited to (a) power interruption, (b) downed trees (mostly in residential areas), and (c) flooding in low-lying communities. Hurricane Irma was mostly a "South Florida event" whose most significant impacts were felt in the Florida Keys, Naples, Ft. Myers and their nearby surrounding communities. Although the storm affected the Orlando community on September 10-11, 2017

(Sunday-Monday), many local businesses and government offices were re-opened as early as September 12, 2017 (Tuesday). Stated simply, Hurricane Irma was mainly an inconvenience, but not a significant calamitous event for the vast majority of the Orlando area.

30. Other commercial properties located in the same geographic area as the M Hotel reported minimal property damage as a result of Hurricane Irma (in comparison to the extensive property damage claimed by Defendants).

31. No breaches to the exterior building envelopes caused by Hurricane Irma could be identified at the M Hotel. Water or moisture damage or elevated moisture levels on interior finishes are attributable to wind-driven rain through openings that pre-existed the storm.

32. The reality is that Hurricane Irma was not the cause of any significant damage at the M Hotel. To the extent that insurance proceeds have not been paid for claimed damages, it is because such damages were actually the result of (a) the intentional and fraudulent acts and omissions of Defendants and/or their agents, as described herein; (b) the prior and long-running failure of Defendants to adequately maintain the Property; and/or (c) pre-existing Property conditions that relate to wear and tear or other systematic neglect, and/or non-covered Causes of Loss.

### Defendants' Misconduct After the Hurricane Passed

33. Immediately following the passage of Hurricane Irma, Defendants quickly began orchestrating the scheme through which they would seek to affirmatively profit from the storm. This consisted of Defendants concocting the exorbitant and largely illegitimate Claim (defined and described below), and impeding Arch's investigation of the Claim.

34. Rather than taking action to minimize any legitimate impacts of the storm, Defendants did exactly the opposite. In addition, Defendants sought to block or complicate

Arch's attempted investigation of the Claim. Defendants' conduct – which was undertaken directly or by hand-picked contractors – consisted of, among other things:

    a. immediately opening (and leaving open) all doors of the guest rooms, thereby allowing rain, heat, humidity and other moisture to invade the rooms;

    b. immediately removing contents from the buildings – including furniture – and leaving it unprotected in the parking or dumpster areas, again exposing them to rain, humidity and other harmful elements. In some instances, Defendants permitted or encouraged work crews to throw furniture from the walkways, thereby ruining it;

    c. quickly removing room air conditioning units, and certain walls and drywall, to prevent Arch from conducting inspections and tests that would have confirmed the true causes of any damage to those items;

    d. using unreliable testing methodologies to give the impression that certain areas of the property were "saturated" when, in fact, they were not;

    e. destroying documents relevant to Arch's investigation *during an examination under oath ("EUO") of BPI, through its representative Bass*;

    f. failing to produce requested documents material to Arch's investigation;

    g. providing false or misleading testimony to Arch, and concealing material facts during the EUO, and at other points during the investigation of the Claim;

### Defendants' Bogus Insurance Claim

35. The following are the purported financial losses submitted by Defendants to Arch (the "Claim"), and which Defendants improperly contend were caused by Hurricane Irma:

| Description | Total |
| --- | --- |
| $2 million to each of Building A, B and C | $6,000,000 |
| Club damage | $ 600,000 |
| Sign, pool, lobby damage | $ 525,000 |
| Income loss ($90,000 per month for six months) | $ 540,000 |
| Extra Expenses | $ 307,000 |
| | $7,972,000 |

36. Defendants' Claim was so infected with false, misleading and fraudulent information – that Arch was required to incur extraordinary expenses to investigate and decipher

10

the Claim. None of these extraordinary expenditures, which exceed $75,000, would have been necessary but-for the deceptive, improper and fraudulent Claim made by Defendants.

37. On March 1, 2018, Arch paid BPI (after deductibles) $138,395.35 as the undisputed amount for damages to the Property, and on May 15, 2018 paid an additional $250,000.00. Both payments were made under a full reservation of rights. Arch had serious reservations about the legitimacy and propriety of the claims underlying the payment of the $388,395.35. But Arch, giving BPI the benefit of every reasonable inference, and acting in utmost good faith, made the referenced payments to BPI. Arch believes it has no further obligations to BPI under the Policy.

### The False, Misleading and Fraudulent Nature of Defendants' Insurance Claim

38. Defendants' Claim was knowingly false, misleading, exaggerated, fraudulent and otherwise improper for each of the reasons outlined above.

### Count I – Claim for Declaratory Judgment

39. This is an action against BPI for declaratory judgment pursuant to 28 U.S.C. 2201.

40. The allegations of paragraphs 1-38 above are hereby restated and incorporated herein by this reference.

41. There exists a real and present controversy between the parties as to whether Arch is obligated under the Policy to pay BPI any additional amounts under its Claim.

42. Arch contends that the provisions of the Policy cited above, and applicable substantive law, excuse it from paying BPI any further amounts under its Claim or under the Policy.

11

43. An actual, valid and justiciable controversy has arisen and exists between the parties. Arch requests a judicial determination and declaration of the parties' respective rights under the Policy, and applicable law, concerning the Claim.

44. Arch is not presenting a theoretical question, nor is it asking the Court to dispense legal advice. The requested declaration will resolve the competing claims of the parties, and prevent further or duplicative litigation concerning this subject matter.

45. Resolution of this dispute will require the Court to construe the Policy and the respective assertions of the parties, as well as the substantive law that governs the Policy.

WHEREFORE, Arch hereby requests the Court to enter a judgment declaring that Arch has no obligation under the Policy to pay BPI any additional amounts under the Claim. Arch further requests that the Court award it its costs, and grant any other or supplemental relief that may be just and necessary under the circumstances.

### Count II – Violation of FDUTPA

46. This is an action against BPI and Bass for their violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA), § 501.201, *et seq.*, Florida Statutes.

47. The allegations of paragraphs 1-38 above are restated and incorporated herein by this reference.

48. Arch is a "person" within the meaning of FDUTPA.

49. BPI and Bass each knowingly and intentionally engaged in unconscionable acts and practices, and unfair and deceptive acts and practices in the conduct of trade or commerce by submitting the Claim to Arch. Defendants knew the Claim to be excessive, false and misleading, not covered by the Policy, and otherwise ineligible for payment. BPI and Bass did this in a quest to obtain benefits from Arch, directly or indirectly, to which they were not entitled.

50. The conduct of BPI and Bass is immoral, unethical, oppressive and unscrupulous.

51. The deceptive acts of BPI and Bass offend established public policy, and affect consumers in Florida by needlessly driving up insurance costs that are borne by such consumers.

52. As a direct and proximate result of the conduct of BPI and Bass, Arch has suffered actual damages in an amount to be determined at trial. Unless the unlawful conduct of Defendants is enjoined, Arch will continue to suffer damages for which they have no adequate remedy at law.

53. Under § 501.2105, Florida Statutes, Arch is entitled to recover from Defendants its reasonable attorneys' fees and costs incurred herein.

WHEREFORE, Arch hereby demands a judgment for damages against BPI and Bass, jointly and severally, plus statutory injunctive relief, together with attorneys' fees, costs, interest and any other relief that may be just or necessary under the circumstances.

DATED this 17th day of July, 2018.

GREENBERG TRAURIG, P.A.
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: spiveyw@gtlaw.com
kellerc@gtlaw.com
bakerco@gtlaw.com
nef-iws@gtlaw.com
FLService@gtlaw.com
*Counsel for Plaintiff Arch Specialty Insurance Co.*

By: /s/ I. William Spivey, II
I. William Spivey, II, Esquire
Florida Bar No. 701076
Courtney M. Keller, Esquire
Florida Bar No. 0028668
Colin S. Baker, Esquire
Florida Bar No. 0066352

ORL 299788490v1