**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

ARCH SPECIALTY INSURANCE
COMPANY,

    Plaintiff,

v.                                               Case No.: 6:18-cv-1149-Orl-41DCI

BP INVESTMENT PARTNERS, LLC,
D/B/A THE "M" HOTEL; and MICAH
DAVID BASS, INDIVIDUALLY,

    Defendants.
_____/

**NON-PARTY BUTLER WEIHMULLER KATZ CRAIG LLP'S
MOTION TO QUASH SUBPOENA DUCES TECUM,
MOTION FOR PROTECTIVE ORDER,
AND OBJECTION TO DEFENDANT'S SUBPOENA DUCES TECUM**

Non-Party BUTLER WEIHMULLER KATZ CRAIG LLP ("Butler"), by and through its undersigned counsel, pursuant to Fed.R.Civ.P. 26(c)(1) and 45(d) and for good cause shown, hereby moves to quash, and/or seeks a protective order regarding the Subpoena[1] issued by Defendant BP Investment Partners, LLC, d/b/a The "M" Hotel and served on September 23, 2019. Butler also objects to the Subpoena.[2] All responsive documentation prescribed by the Subpoena is protected by the attorney/client privilege and/or the work-product doctrine, and the attempted discovery of Non-Party Butler Weihmuller Katz Craig LLP's file is prohibited.

---

[1] A copy of the relevant Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action ("Subpoena") is attached as **Exhibit A**.

[2] Butler objects individually to each request of the Subpoena on the grounds that the requests seek the production of documents protected by the attorney-client privilege and work product doctrine. Additionally, Butler objects to numerous of the requests (nos. 1, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15 and 16) on the grounds that such requests are vague, ambiguous, and improperly assert that Butler investigated the insurance claim.

1

## I. Introduction

Defendant BP Investment Partners, LLC d/b/a The M Hotel ("BP Investment") served the Subpoena on counsel for Plaintiff Arch Specialty Insurance Company ("Arch") seeking extraordinary discovery. Defendant BP Investment seeks virtually the entire file of Arch's counsel, Butler. On its face, the Subpoena invades both the attorney-client privilege and Arch's work product protection. Further, to the extent the Subpoena seeks "fact work product," Defendant BP Investment cannot establish either sufficient "substantial need," or an inability to obtain this information without "undue hardship." In short, the Subpoena is highly improper and should not have been issued. Good cause exists to quash the Subpoena, and to issue a protective order to protect Butler from annoyance and oppression (including the undue burden and expense associated with preparing a privilege log for its entire file).

Accordingly, this Court should quash the Subpoena, issue a protective order as to Butler's entire file, and prohibit the attempted discovery. Further, Butler should not be required to prepare a privilege log. Should Butler be required to comply with the Subpoena to any degree, however, Butler seeks recovery of its costs in the amount of the reasonable attorney's fees necessary to respond to the Subpoena.

## II. Background Facts

On or about August 1, 2017, Plaintiff Arch issued Policy No. ESP730324501 to Defendant BP Investment for the policy period August 1, 2017, to August 1, 2018, for the property located at 6603 International Drive, Orlando, Florida 32819. On or about September 15 2017, four days after Hurricane Irma passed Central Florida, BP Investment reported a purported loss caused by Hurricane Irma. *See* Declaration of

Michael Cipollo dated September 27, 2019 ("Cipollo Decl."), attached as **Exhibit B**, at ¶8 (Doc 101-3).

On September 15, 2017, Arch assigned independent adjusting firm, Engle Martin & Associates ("Engle Martin"), to investigate and adjust the claim, including authorizing the retention of experts to inspect the insured property and report on their findings. *See* **Exhibit B**, Cipollo Decl., at ¶¶10-12 and 23. On September 22, 2017, Arch retained Butler to provide it legal advice with respect to Defendant BP Investment's loss and insurance claim. *See* **Exhibit B**, Cipollo Decl., at ¶¶19-22 (Doc 101-3); Declaration of Janice C. Buchman, Esq. dated October 4, 2019 ("Buchman Decl."), attached as **Exhibit C**, at ¶3 ("**Exhibit C**, Buchman Decl."). Plaintiff Arch retained Butler on September 22, 2017 due to its concerns regarding the veracity of Defendant BP Investment's claim, and the anticipated litigation with Defendant BP Investment that would result.[3] **Exhibit B**, Cipollo Decl., at ¶¶13-21 and 22 (Doc 101-3).

On July 17, 2018, Plaintiff Arch's trial counsel, Greenberg Traurig, P.A., filed this declaratory judgment action. (Doc 1) In its Complaint, Plaintiff Arch asserts at ¶ 17 that "under the terms, conditions, exclusions and limitations of the Policy — including, but not limited to, the concealment, misrepresentation or fraud provision — BPI is not entitled to recover from Arch any additional insurance proceeds." Although Butler continues to represent Arch in connection with the claim, Butler is not Arch's trial counsel in this action.

---

[3] The undersigned recognizes that a party seeking protection under the work product doctrine bears the burden of demonstrating that the documents at issue were prepared in anticipation of litigation. *See State Nat'l Ins. Co. v. Lamberti,* No. 08-60760-CIV, 2009 WL 10667731, at *1 (S.D. Fla. Mar. 19, 2009).

On September 23, 2019, Defendant BP Investment served Butler with the Subpoena (**Exhibit A**). *See* **Exhibit C**, Buchman Decl. at ¶7. The Subpoena is staggering in scope, and audacious in content. The return date for the Subpoena is October 4, 2019, only nine (9) business days after service. Given the obvious privilege issues and size of Butler's file, the October 4, 2019, return date is patently unreasonable.

The Subpoena seeks sixteen categories of documents, including, as examples:

(a) Butler's <u>entire file</u> "regarding the investigation of the insurance claim" from "September 11, 2017 to July 17, 2018" (request no. 1);

(b) "all correspondence between [Butler] and any other person concerning any aspect of the investigation of the CLAIM" from "September 11, 2017 to July 17, 2018" (request no. 2);

(c) "all written reports, letters, or other written documents created" from "September 11, 2017 to July 17, 2018" by Butler "concerning the investigation of the CLAIM." (request no. 3);

(d) "all billing records concerning [Butler]'s services" from "September 11, 2017 to July 17, 2018" "for the investigation of the CLAIM" (request no. 4);

(e) "all documents showing the scope of [Butler]'s employment concerning the investigation of the CLAIM and compensation for such service" "from "September 11, 2017 to July 17, 2018" (request no. 8);

(f) "all-time sheets" for the period from "September 11, 2017 to July 17, 2018" "reflecting the time spent conducting the investigation of the CLAIM by each and every employee of [Butler]" (request no. 10);

    (g) "all documents evidencing payment to [Butler], its subsidiaries, agents, subcontractors, independent contractors, representatives, predecessors and/or affiliates in payment for services rendered to Insurer for the investigation of the CLAIM" from "September 11, 2017 to July 17, 2018" (request no. 13);

    (h) "all correspondence, emails, faxes, etc., between [Butler], its subsidiaries, agents, subcontractors, independent contractors, representatives, predecessors, and/or affiliates and Plaintiff [Arch, its client] concerning the investigation of the CLAIM" from "September 11, 2017 to July 17, 2018" (request no. 14); and

    (d) "[a]ll documents furnished to BWK, by the Insurer, its subsidiaries, agents, subcontractors, independent contractors, representatives, predecessors and/or affiliates including but not limited to any estimates, receipts, bills, invoices, proposals, work orders, cancelled checks, check statements, permits, credit card statements, and notes concerning the investigation of the CLAIM" from "September 11, 2017 to July 17, 2018" (request no. 16).

The Subpoena also seeks "[a] copy of the executed written contract/agreement between [Butler], its subsidiaries, agents, subcontractors, independent contractors, representatives, predecessors, and/or affiliates and Insurer for [Butler]'s investigation of the CLAIM" (request no. 12), which is not limited to the time period between September 11, 2017 and July 17, 2018.

Butler was never responsible for conducting Arch's investigation of the insurance claim; Butler only provided legal advice and services as requested by Arch (*see* **Exhibit B**, Cipollo Decl., at ¶¶ 10-12, 19, 21-25 (Doc 101-3)).

### III.  Summary of Argument

The Subpoena improperly seeks access to virtually all of Butler's file materials.[4] However, Butler's entire file is attorney-client privileged (which is not discoverable) and/or work product (either "opinion work product" or alternatively, "fact work product," both of which are also not discoverable).  Further, Butler does not have trial evidence in its possession.  Moreover, to the extent Defendant BP Investment contends that Butler's file contains "fact work product," there has not been, nor can there be, a showing of "substantial need" or "undue hardship" that would justify violating Arch's counsel's work product protection.  Fed. R. Civ. P. 45(d)(3)(A)(iiii) states in pertinent part that "[o]n timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . .(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies."[5]  As no exception or waiver applies here, the Subpoena should be quashed for this reason alone.

---

[4] Through previous discovery, Arch has fully produced to Defendant BP Investment all discoverable portions of Arch's claim file, relative to pre-litigation documentation.  Butler's voluminous file contains more than 8,800 electronic records, of which 30 are "zip" files (a significant portion of which contains extensive documents) and 3,195 are emails (a significant portion of which has one or more voluminous attachments).  These electronic records do not include time entry and payments records, or printed records.  Butler's file includes two banker's boxes of printed documents as well as four red-welds of printed documents.  Due to the manner in which Butler's electronic records are maintained, it is impossible at this juncture to determine the total number of pages of documents in Butler's file.  But, to be sure, Butler's file is voluminous.  See **Exhibit C**, Buchman Decl. at ¶6.

[5] *See, e.g., Great Am. Ins. Co. v. Veteran's Support Org.*, 166 F. Supp. 3d 1303 (S.D. Fla. 2015) (court granted motion to quash in context of third-party (liability policy) coverage dispute, holding that production of non-party attorney general's "entire investigative file would encompass a large number of documents that have no relevance to the claims or defenses herein and would impose an undue burden on [the attorney general], which would have to review voluminous documents for privilege and compile a privilege log.").

Additionally, Defendant BP Investment made no effort to tailor the Subpoena to the proportional needs of the case, in violation of Fed. R. Civ. P. 26(a).[6] The Complaint presents a request for declaratory relief in an insurance coverage dispute. The focus of discovery in this coverage dispute should be on why the claim is not covered. The Subpoena is not, however, tailored to seek documents that bear on whether there is coverage for Defendant BP Investment's insurance claim. Instead, the focus of the Subpoena is <u>Butler's entire panoply of legal services</u> rendered to Arch during Arch's investigation of the insurance claim. Such focus is entirely improper in an insurance coverage dispute.[7]

Similarly, Defendant BP Investment made no effort, as required by Rule 45, to take reasonable steps to avoid imposing undue burden or expense on Butler. *See* Fed.R.Civ.P. 45(d)(1) (which also states that "[t]he court for the district where compliance is required must enforce this duty and impose an appropriate sanction-- which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply") and Fed. R. Civ. P. 45(d)(3)(A)(iv) (which states in pertinent part that "[o]n timely motion, the court for the district where compliance is required must

---

[6] *See State Farm Mut. Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.,* No. 6:06-CV-1757-ORL-GJK, 2008 WL 11338612, at *2 (M.D. Fla. July 29, 2008) (court denied plaintiff's motion to compel production from a non-party in response to its subpoena, stating that "a party requesting discovery must narrowly tailor the requests to elicit a specific response;" court also quoted from the Middle District of Florida Court's Civil Discovery Handbook (2001 ed.), which stated: "In each case a party should carefully determine which discovery methods will achieve the discovery goal of obtaining useful information as efficiently and inexpensively as possible for everyone concerned.").

[7] *See Ranger Constr. Indus., Inc. v. Allied World Nat'l Assurance Co.*, No. 17-81226-CIV, 2018 WL 2999691, at *2 (S.D. Fla. June 15, 2018) (court stated that "it is clear that an insurance company's intent, conduct, and beliefs are not to be considered under Florida law when interpreting whether the insurance company has breached the insurance policy" and found that "the documents sought by Defendant that pertain to Defendant's intent, belief, and/or conduct in the underlying Astaphan lawsuit are not relevant to the pending claims for breach of contract and declaratory judgment and should not be ordered to be produced").

7

quash or modify a subpoena that . . . (iv) subjects a person to undue burden). It is hard to the think of anything that Defendant BP Investment <u>did not</u> request from Butler. The sheer volume of documents in Butler's file[8] would result in an extraordinary burden and significant expense should any degree of compliance be required. The burden and expense facing Butler in responding to a request for its "entire file" through July 17, 2018, greatly outweighs any likely benefit that Defendant BP Investment could reasonably expect to obtain.[9]

Moreover, the extraordinary burden and significant expense facing Butler is related not solely to the production of documents, but also to the Rule 45(e)(2)(A)(ii) requirement for a privilege log. This Rule requires that Butler "describe the nature of the withheld documents…in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim [of privilege]." Butler's file contains a countless number of communications to and from Arch and its representatives, including its independent adjuster, as well as legal research and other documents that contain Butler's attorney's mental impressions. Even if Butler is excused from

---

[8] The scope of Butler's voluminous file is described in footnote 3 above.

[9] The court must balance the requesting party's interests in disclosure against the burden of disclosure on the nonparty. As stated in 9A Charles Alan Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2463.1 (3d ed. 2008):

> Whether a subpoena subjects a witness to undue burden within the meaning of Rule 45(cd)(3)(A)(iv) [sic] usually raises a question of the reasonableness of the subpoena. The determination of a subpoena's reasonableness requires a court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it; this process of weighing a subpoena's benefits and burdens calls upon the trial court to consider whether the information is necessary and whether it is available from any other source. It obviously is a highly case specific inquiry and entails an exercise of judicial discretion.

Here, the Subpoena is not reasonable; the Subpoena seeks documents protected by attorney-client privilege and work product doctrine, the requested information, to the extent discoverable, is available from other sources, and the burden on Butler far outweighs Defendant BP Investment's interests in disclosure.

8

producing any documents (which respectfully it should be), compliance with Rule 45(e)(2)(A)(ii)'s requirement to produce a privilege log would result in an extraordinary burden and significant expense should compliance with the referenced sub-part be required.[10] Accordingly, should Butler be required to comply with the Subpoena to any degree, Butler seeks costs in the amount of the reasonable attorney's fees to necessary respond to the Subpoena.

Butler also submits that the Subpoena is an improper attempt by Defendant BP Investment to circumvent the well-established rule under Florida law that discovery of an insurer's claims file in a coverage dispute is not permissible until the insurer's obligation to provide coverage has been established.[11] Defendant BP Investment should not be able to circumvent this well-established Florida rule to obtain documents that are not discoverable in Arch's claim file.

---

[10] Even in a bad faith lawsuit, which this action is not, where the focus "is not on the actions of the claimant but rather on those of the insurer in fulfilling its obligations to the insured," (*Berges v. Infinity Ins. Co.*, 896 So. 2d 665, 677 (Fla. 2004)), Florida's courts have deemed a subpoena requesting the production of an attorney's entire file to be improper and unduly burdensome. As one example, in *Ford v. Gov't Employees Ins. Co.,* No. 1:14CV180-MW/GRJ, 2015 WL 11109504, at *2 (N.D. Fla. Feb. 3, 2015), in the context of a third party bad faith lawsuit, the court quashed a subpoena issued by an insurer to the attorney handling plaintiff's claim in the underlying suit. The court explained that "[e]ven assuming that some documents are marginally relevant, the subpoenas force the subject attorneys to comb through their files and compile privilege logs to safeguard their work product and their clients' confidences." The court held that "[b]ecause such a demand fails to 'avoid imposing undue burden or expense' on [the attorney], GEICO's subpoena is quashed." *See also Cadle v. GEICO Gen. Ins. Co.,* No. 613CV1591ORL31GJK, 2014 WL 12621189, at *3 (M.D. Fla. May 28, 2014) (court quashed subpoena, explaining "while counsel's entire file from the underlying action may contain some information relevant to this case, the request at issue will undoubtedly capture materials that are completely irrelevant to this matter. The Defendant made no effort to tailor the Subpoena to the issues in this case.").

[11] *See Travelers Indem. Co. of Connecticut v. Attorney's Title Ins. Fund, Inc.,* No. 2:13-CV-670-FTM-38CM, 2015 WL 6869365, at *3 (M.D. Fla. Nov. 9, 2015), objections overruled, No. 2:13-CV-670-FTM-38CM, 2016 WL 153126 (M.D. Fla. Jan. 13, 2016) (citing *Gavin's Ace Hardware, Inc. v. Federated Mutual Insurance Company,* 2011 WL 5104476, at *3 (M.D. Fla. Oct. 27, 2011).). *See also Blanchard v. State Farm Mutual Ins. Co.*, 575 So. 2d 1289 (Fla. 1991), *Hartford v. Mainstream Const. Group, Inc.,* 864 So. 2d 1270 (Fla. 5th DCA 2004).

For all of the foregoing reasons, Butler objects to the discovery sought by the Subpoena. Accordingly, Butler requests that the Court quash the Subpoena and issue a protective order as to Butler's entire file, prohibiting any discovery of the documents in Butler's file. Additionally, the nature and sheer volume of documents in Butler's file would make the preparation of a privilege log unduly burdensome and expensive. Thus, for this reason as well, the Subpoena should be quashed and a protective order issued, excusing Butler from the requirement of preparing a privilege log .

## IV. Legal Memorandum

### A. Butler's Entire File Contains Protected Attorney-Client Privileged Communications.

The Subpoena improperly invades the attorney-client privilege,[12] and thus should be quashed, and a protective order issued as to Butler's entire file.

The confidentiality of attorney-client privileged communications is considered to be "one of the most sacrosanct principles of the law," *Renter v. Physicians Cas. Risk Retention Grp.*, 2017 WL 395242, at *4 (S.D. Fla. Jan. 27, 2017). The attorney-client privilege is codified under Florida law in Florida Statute §90.502,[13] which states in relevant part that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client." "The purpose of the [attorney-client] privilege is to encourage clients to make full disclosure to their attorneys." *Fisher v. United*

---

[12] Under Florida law, an attorney is permitted to raise attorney-client privilege on behalf of the client. Fla. Stat. § 90.502(3).

[13] Rule 501, Fed.R.Evid., provides that Florida law relating to attorney-client privilege governs diversity cases.

10

*States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976).  An insured is not permitted discovery of privileged communications that occurred between the insurer and its counsel in a first party coverage action.  *Genovese v. Provident Life & Accident Ins. Co.,* 74 So. 3d 1064, 1068 (Fla. 2011), *as revised on denial of reh'g* (Nov. 10, 2011)

Here, the Subpoena plainly invades the attorney-client privilege.  As stated above, Butler was retained by Arch to provide legal advice concerning Defendant BP Investment's insurance claim.  By that time, Arch had already retained independent adjusting firm Engle Martin to investigate the loss and claim.  Accordingly, Butler's entire file contains protected attorney-client privileged communications during the time period that Arch was investigating Defendant BP Investment's insurance claim, from the date of its retention through the date of filing this action.  Accordingly, the Subpoena should be quashed, and a protective order issued as to Butler's entire file.

**B.     Butler's <u>Entire</u> File Contains Work Product Protected Materials.**

The Subpoena also invades Arch's work product protection, and thus should be quashed, and a protective order issued as to Butler's entire file.

The work-product doctrine originated in *Hickman v. Taylor*, where the court explained that "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." *Hickman v Taylor,* 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

As explained by the court in *State Nat'l Ins. Co. v. Lamberti*, No. 08-60760-CIV, 2009 WL 10667731, at *1 (S.D. Fla. Mar. 19, 2009) (citations and footnote omitted):

> [T]he work product doctrine has been codified in Federal Rule of Civil Procedure 26(b)(3).3 The Rule recognizes two types of work product—fact work product, which protects information gathered in anticipation of litigation, and opinion work product, which consists of the attorney's

11

mental impressions, opinions, or legal theories. Fact work product is subject to discovery only upon a showing that the party seeking discovery "has substantial need of the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). By contrast, work product containing an attorney's opinions, mental impressions, conclusions, and legal theories enjoys nearly absolute protection.

As the Florida Supreme Court aptly explained in *Surf Drugs, Inc. v. Vermette,* 236 So. 2d 108, 112 (Fla. 1970), the work product doctrine has been defined to mean the following

> What constitutes "work product" is incapable of concise definition adequate for all occasions. Generally, those documents, pictures, statements and diagrams which are to be presented as evidence are not work products anticipated by the rule for exemption from discovery. Personal views of the attorneys as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, diagrams and charts he may refer to as trial for his convenience, but not to be used as evidence, come within the general category of work product.

*Surf Drugs,* 236 So. 2d at 112.[14]

Moreover, in *Dodson v. Persell*, 390 So. 2d 704 (Fla. 1980), the Supreme Court of Florida explained that materials intended to assist counsel in preparation for trial, *but which will not be presented at trial as evidence*, remain fully protected from discovery.

> Clearly, one party is not entitled to prepare his case through the investigative work product of his adversary where the same or similar information is available through ordinary investigative techniques and discovery procedures.

*See Id.* 708.

---

[14] Florida fully adopted the landmark holding set forth by the Supreme Court of the United States in *Hickman v. Taylor*, 329 U.S. 495 (1947).

In *Southern Bell Tel. & Tel. Co. v. Deason*, 632 So. 2d 1377 (Fla. 1994), the Supreme Court of Florida delineated the difference between "fact work product" and "opinion work product."

> Fact work product traditionally protects that information which relates to the case and is gathered in anticipation of litigation. Opinion work product consists primarily of the attorney's mental impressions, conclusions, opinions, and theories. Whereas fact work product is subject to discovery upon a showing of "need" and "undue hardship," opinion work product generally remains protected from disclosure.

*See Id.* at 1384 (citations omitted). Accordingly, an attorney's "opinion work product" can never be accessed through discovery; however, "fact work product" can, in limited circumstances, be accessed, but only upon a showing of "substantial need" and "undue hardship."

The rationale for the work product doctrine was explained by the Supreme Court of Florida in *Northup v. Acken*, 865 So. 2d 1267 (Fla. 2004), as follows:

> The overriding touchstone in this area of civil discovery is that an attorney may not be compelled to disclose the mental impressions resulting from his or her investigations, labor, or legal analysis unless the product of such investigation itself is reasonably expected or intended to be presented to the court or before a jury at trial.

*See Id.* at 1272; *State Farm Mut. Auto. Ins. Co. v. Knapp*, 234 So. 3d 843, 849 (Fla. 5th DCA 2018); *Acevedo v. Doctors Hosp., Inc.*, 68 So. 3d 949, 953 (Fla. 3d DCA 2011).

Here, the Subpoena invades upon Butler's communications – a clear violation of "opinion work product." After all, the correspondence and documentation sought comes directly from Butler's file, which by definition is protected work product. Moreover, to the extent the Subpoena seeks Butler's correspondence with any entities or persons other than its client and Defendant BP Investment, such requests in the Subpoena on their

face require a disclosure of Butler's mental impressions and, thus, constitute protected "opinion work product."

In *Butler v. Harter*, 152 So. 3d 705 (Fla. 1st DCA 2014), the Court discussed efforts by one party to gain access to an opponent's litigation file. The *Butler* court found that counsel's litigation file constituted opinion work product, which was fully protected from discovery. Further, the Court in *Butler* found that *even if* counsel's file was not deemed to be "opinion work product," it was still protected from discovery, because the party seeking discovery could not show the necessary level of "substantial need" and "undue hardship." Therefore, in *Butler*, the request for discovery from counsel's litigation file was wholly rejected. See *Id.* at 711-713.

Thus, to the extent the Subpoena seeks documents created after the commencement of litigation from Butler's file (*see* request no. 12), such file materials are also "opinion work product" that is fully protected from discovery.[15] Furthermore, even if the documentation could be deemed "fact work product," Defendant BP Investment cannot demonstrate "substantial need" and "undue hardship." Defendant BP Investment can issue, and indeed has issued, subpoenas to Plaintiff Arch's independent adjuster, as well as its experts, seeking the documentation it now seeks from Butler's file.[16] Defendant BP Investment knows the identity of Plaintiff Arch's independent adjuster as well as its experts (including its engineers, industrial hygienist,

---

[15] Butler notes that the request is improper because Butler did not have responsibility for the adjustment and/or investigation of the claim. See **Exhibit B**, Cipollo Decl., at ¶¶19-22 and 24-26; *see also* **Exhibit C**, Buchman Decl. at ¶¶4-5. Further, Butler's file contains no responsive documents.

[16] Butler understands that Arch, through its trial counsel, has already produced more than 47,000 pages of documents to Defendant BP Investment.

roofing consultant, salvor consultant,[17] and building consultant). Plaintiff Arch's independent adjuster communicated with Defendant BP Investment during Arch's claim investigation. Further, Defendant BP Investment was advised at all times, at its request, of the names of all experts (including their employers) retained by Plaintiff Arch to inspect the subject property as part of Plaintiff Arch's investigation of the reported loss and claim.

Butler also submits that Request no. 12 of the Subpoena (which is the only request that seeks documents created after the commencement of litigation) presumes that Butler conducted an "investigation of the Claim." This did not occur. As stated above, Butler's role was limited to providing legal advice to Arch concerning Defendant BP Investment's insurance claim, and the veracity thereof. Arch retained independent adjusting firm Engle Martin to investigate and adjust the claim. (*See* **Exhibit B**, Cipollo Decl., at ¶¶10-12 and 23; *see also* **Exhibit C**, Buchman Decl. at ¶¶4-5.) It is the undersigned's understanding that Defendant BP Investment has already issued a subpoena to Engle Martin.

Further, a similar situation was addressed by the Federal District Court in West Palm Beach, Florida, in *UnitedHealthcare of Florida, Inc. v. American Renal Assoc.*, 2017 WL 6210835 (S.D. Fla. 2017), wherein the Court highlighted that communications and documentation like those elicited from Butler are clearly work product and not discoverable.

> The discovery sought by Plaintiffs is not routine; rather it is quite extraordinary. Plaintiffs seek correspondence and material created by

---

[17] A "salvor consultant" is retained for the purpose of determining if there is damage to personal property or, in this case business personal property (contents including hotel furnishings), and if appropriate, if there is a salvage/recovery value in such damaged property.

15

> Defendants' counsel after the commencement of this federal lawsuit. This correspondence and material is between Defendants' attorneys and attorneys for non-parties who apparently are potential witnesses in this litigation. Parties do not typically seek post-litigation communications of opposing counsel. …
>
> . . .
>
> Plaintiffs' effort to obtain the post-litigation correspondence and documents of Defendants' counsel seems to be nothing more than an improper fishing expedition based upon mere speculation.

*See Id.* at *1 - *2. Accordingly, the trial court in *UnitedHealthcare* specifically found that post-litigation communications were wholly protected from discovery per the work product privilege. *See Id.* at *3. Similarly, the fishing expedition presented by the Subpoena should not be countenanced by this Court.

In sum, much of the documentation and other communications sought from Butler's file is "opinion work product" that is fully protected from discovery. And, even if any communications could be deemed "fact work product," Defendant BP Investment has <u>not</u> established sufficient "substantial need," nor has it shown an inability to obtain this information without "undue hardship." Accordingly, the Subpoena must be quashed, a protective order issued, and the discovery sought prohibited.

## V.     <u>Conclusion</u>

Butler has met its burden of demonstrating good cause for a protective order required by Fed. R. Civ. P. 26(c)(1). The Subpoena invades the attorney-client privilege, and for this reason alone should be quashed and a protective order issued. The Subpoena also violates Plaintiff Arch's work product protection. Defendant BP Investment can issue, and has issued subpoenas to Plaintiff Arch's independent adjuster, as well as its experts, seeking the documentation it now seeks from Butler's file. Defendant BP Investment knows the identity of Plaintiff Arch's independent

adjuster as well as its experts (including its engineers, industrial hygienist, roofing consultant, salvor consultant, and building consultant). Plaintiff Arch's independent adjuster communicated with Defendant BP Investment during Arch's claim investigation. Further, Defendant BP Investment was advised at all times, at its request, of the names of all experts (including their employers) retained by Plaintiff Arch to inspect the subject property as part of Plaintiff Arch's investigation of the reported loss and claim.

The sheer volume of documents in Butler's file would result in an extraordinary burden and significant expense should any degree of compliance be required. Moreover, compliance with Rule 45(e)(2)(A)(ii)'s requirement to produce a privilege log would result in an extraordinary burden and significant expense should any degree of compliance be required. The burden and expense facing Butler in responding to a request for its "entire file" through July 17, 2018, greatly outweighs any likely benefit that Defendant BP Investment could reasonably expect to obtain. Accordingly, should Butler be required to comply with the Subpoena to any degree, Butler seeks recovery of its costs in the amount of the reasonable attorney's fees necessary to respond to the Subpoena.

Further, Defendant BP Investment should not be permitted to seek discovery of documents from Butler's file that are not properly discoverable under Florida law in Arch's claim file.

Accordingly, there is good cause for this Court to quash the subpoena. There is also good cause for this Court to issue a protective order, to prohibit Defendant BP Investment from obtaining the production of documents prescribed by the Subpoena,

and to protect Butler from annoyance and oppression, as well as the undue burden and expense associated with preparing a privilege log for its entire file.

BUTLER WEIHMULLER KATZ CRAIG LLP

*/s/ Janice C. Buchman*
WILLIAM R. LEWIS, ESQ.
Florida Bar No.:  0879827
wlewis@butler.legal
JANICE C. BUCHMAN, ESQ.
Florida Bar No.:  0796610
jbuchman@butler.legal
Secondary:   ehorton@butler.legal
400 N. Ashley Drive, Suite 2300
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
*Attorneys for Non-Party Butler Weihmuller Katz Craig LLP*

**CERTIFICATE OF GOOD FAITH CONFERENCE**

Pursuant to Middle District of Florida Local Rule 3.1(g), I hereby certify, as counsel for Non-Party BUTLER WEIHMULLER KATZ CRAIG LLP, that on October 1, 2019, I personally conferred by telephone with Keith Lambdin, Esq., counsel for Defendant BP Investment.  Mr. Lambdin advised me that he does not agree to the relief sought by this motion.

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was served by electronic mail on October 4, 2019, on all counsel or parties of record on the Service List below.

    I. William Spivey, II, Esq.
    Courtney M. Keller, Esq.
    Colin S. Baker, Esq.
    Greenberg Traurig, P.A.
    450 Sourth Orange Avenue, Suite 650
    Orlando, FL 32801
    spiveyw@gtlaw.com
    kellerc@gtlaw.com
    bakerco@gtlaw.com
    nef-iws@gtlaw.com
    FLService@gtlaw.com
    *Counsel for Plaintiff Arch Specialty Insurance Company*

    Keith J. Lambdin, Esq.
    Agnant & Lambdin, LLC
    2 South University Drive, Suite 315
    Fort Lauderdale, FL 33324
    klambdin@agnantlaw.com
    egarcia@agnantlaw.com
    kpiedra@agnantlaw.com
    *Counsel for Defendants BP Investment Partners, LLC*

    _____
    JANICE C. BUCHMAN, ESQ.