UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ARCH SPECIALTY INSURANCE
COMPANY,

        Plaintiff,

v.                                          Case No:  6:18-cv-1149-Orl-78DCI

BP INVESTMENT PARTNERS, LLC,

        Defendant.
_____/

## ORDER

THIS CAUSE is before the Court on Plaintiff's *Daubert*[1] Motions. (Doc. Nos. 142, 143, 144, 145, 146, 147). Defendant opposes the Motions. (Doc. Nos. 151, 152). Plaintiff replied to the responses in opposition, (Doc. 165), and Defendant filed a Sur-Reply (Doc. 172). For the below reasons, the Motions will be granted in part.

**I.  BACKGROUND FACTS**

The M Hotel at the center of this dispute was built in 1972 and originally operated as a Howard Johnson. (Doc. 164, ¶ 5).[2] Micah D. Bass formed Defendant BP Investment Partners, LLC ("**BPI**") to acquire and operate a hotel at 6603 International Drive, Orlando, Florida 32819, and BPI bought the M Hotel. (*Id.* ¶¶ 2–3, 5). Plaintiff Arch Specialty Insurance Company ("**Arch**") issued BPI a commercial property insurance policy, Policy No. ESP 7303245-01 (Doc. 1-2).

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
[2] The M Hotel's footprint includes three buildings with guestrooms, an office in the main lobby building, and a bar and restaurant. (Doc. 164, ¶ 5). The hotel also houses a swimming pool, pool deck, and exterior bar. (Doc. 1, ¶ 20; Doc. 223, ¶ 10).

Hurricane Irma made landfall in Orlando on September 10 and 11, 2017, as a Category 1 hurricane with sustained winds of fifty to sixty miles per hour. (Doc. 101-3, ¶ 8; Doc. 163, ¶ 4). BPI subsequently filed a claim with Arch for nearly $8,000,000.00 in financial damages to the M Hotel arising from Hurricane Irma, including $803,775.40 that BPI claims it spent on temporary repairs. (Doc. 101-3, ¶ 8; Doc. 149-6, ¶ 6; Doc. 163, ¶ 30; Doc. 163-25). Arch alleges BPI submitted "a false and fraudulent insurance claim" for damages allegedly resulting from Hurricane Irma that instead arose from "(a) the intentional and fraudulent acts and omissions of [BPI] and others acting at [its] direction; (b) the prior and long-running neglect and mismanagement of the insured property, and (c) the ordinary wear and tear of the premises[.]" (Doc. 1, ¶ 1). This includes engaging "in an extensive and well-planned presentation to Arch of . . . claims that were intended to defraud Arch out of roughly $8 million of insurance proceeds." (*Id.* ¶ 2). Because of BPI's allegedly fraudulent conduct, Arch asserts a single count for declaratory judgment that the policy is void for fraud. (*Id.* ¶¶ 39–45).

On July 17, 2020, this Court denied BPI's Motion for Summary Judgment. (Doc. 244). Now the Court will consider the six pending discovery and *Daubert* motions. Important to their resolution are these deadlines: BPI's expert reports were due on July 26, 2019,[3] and discovery closed on October 18, 2019. (Doc. 39 at 1; Doc. 74). The Motions pertain to BPI's alleged "document dump" to a Dropbox link on July 26, 2019, which purportedly included seven expert reports. On August 2, 2019, BPI clarified that

---

[3] Arch timely disclosed its six expert reports on June 3, 2019. (Doc. 39 at 1; Doc. 73, ¶ 12). On the day of BPI's original expert disclosure deadline, BPI asked for an extension, which the Court granted until July 26, 2019. (Doc. 39 at 1; Doc. 73 at 1–5; Doc. 74).

2

the Dropbox also contained Derek Schenavar's curriculum vitae ("**CV**"). (Doc. 142-5 at 1). BPI's counsel also e-mailed Arch to let it know that "[w]e anticipate receiving additional expert reports next week which we will furnish to you upon receipt of same." (*Id.*).

## II.     LEGAL STANDARD

Parties should conduct discovery "with a spirit of cooperation and civility" and with minimal judicial intervention. *United Subcontractors, Inc. v. Darsey*, No. 3:13-cv-603-J-32MCR, 2014 WL 67649, at *1 (M.D. Fla. Jan. 8, 2014) (citation omitted). Disclosures of experts that have been "retained or specifically employed to provide expert testimony in the case" require a written report, prepared and signed by the witness, containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B). These disclosures must take place "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). "If a party fails to provide information or identify a witness as required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence . . . at a trial, unless the failure was substantially justified or is harmless. Fed. R. Civ. P. 37(c)(1). "Expert reports can be stricken if they offer conclusory opinions and do not contain some discussion of the

3

expert's reasoning and the thought process that led to the ultimate opinions." *Glowner v. Muller-Martini Mailroom Sys., Inc.*, No. 8:09-cv-01768-EAK-TGW, 2012 WL 276193, at *2 (M.D. Fla. Jan. 31, 2012) (alterations, citations, and internal quotations omitted).

Although opinion testimony is generally inadmissible, Federal Rule of Evidence 702 permits "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to provide opinion testimony in limited circumstances. Expert opinion testimony is admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Eleventh Circuit has distilled the test for determining expert testimony admissibility into three basic inquiries—(1) is the expert qualified to testify competently; (2) is the expert's methodology sufficiently reliable; and (3) will the testimony assist the trier of fact. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citations omitted).

The Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The district court receives considerable leeway to execute its duty. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

## III. DISCUSSION

Arch moves to strike and exclude the opinions of eight experts: One Call Construction Services, Inc. ("**One Call**"), Southeastern Capital of Orlando, Inc. ("**Southeastern Capital**"), World One Investments, LLC ("**World One**"), Cotton Construction and Roofing ("**Cotton**"), N&J Pool Services ("**N&J**"), Derek H. Schenavar, Rocco Calaci, and Nance Koslik. To begin, Arch argues that BPI untimely disclosed several of the challenged expert reports because BPI did not identify them in the Dropbox link until one week after the disclosure deadline. Even so, it is undisputed the expert reports were retrievable through Dropbox on the due date, even if they were not labeled. Thus, the reports provided in the Dropbox link were timely disclosed. Even if the reports were not timely disclosed, any prejudice that occurred was minimal, and Arch had ample time to review the expert reports and depose the experts before discovery closed on October 18, 2019.

### A.     Schenavar, Calaci, and Koslik

It is undisputed that on July 26, 2019, the day of the expert disclosure deadline, BPI only produced the CV of Mr. Schenavar, the President of DKK Consulting Inc. (Doc. 142-5 at 1; Doc. 146-3 at 2). BPI did not provide Mr. Schenavar's Engineer Inspection Report (Doc. 146-1) to Arch until September 26, 2019—two full months after BPI's expert disclosures were due. (Doc. 146-5 at 1). Additionally, on August 2, 2019, BPI turned over DKK Consulting Inc.'s Retainer Agreement and Fee Schedule to Arch, which Mr. Schenavar did not execute until July 30, 2019—four days after the expert disclosure deadline. (Doc. 146-3 at 2; Doc. 142-5 at 1). In its Response (Doc. 152), BPI argues it disclosed Mr. Schenavar as an individual likely to have discoverable information on

October 9, 2018, and it provided three supplemental disclosures to Arch as BPI received more information. (*Id.* at 8–10). Rather than take responsibility for the belatedness of the disclosure, BPI claims it was not at fault for the report not being in its possession, despite the already extended disclosure deadline. BPI argues that Arch has not been prejudiced by the delay and chose not to take discovery from Mr. Schenavar or DKK Consulting Inc. (*Id.* at 9).

Turning to the LRC Services expert report (Doc. 147-1), written by Consulting Meteorologist Ms. Koslik and reviewed by Mr. Calaci, BPI did not include this report in the Dropbox link either. Instead, on August 2, 2019, BPI stated it was supplementing its initial disclosures by providing Mr. Calaci's CV. (Doc. 142-5 at 1; Doc. 147-2). Finally, on August 8, 2019, BPI provided Mr. Calaci's report. (Doc. 147-3 at 1).

As set forth in the Case Management and Scheduling Order, parties must "fully comply with Federal Rule of Civil Procedure 26(a)(2) and 26(e)" by the date for disclosure set by the Court. (Doc. 39 at 3). Without question, BPI's disclosures failed to satisfy this rule as neither report was timely disclosed.[4] Accordingly, under Federal Rule of Civil Procedure 37(c)(1), the untimely reports are due to be excluded unless BPI can show that its "failure was substantially justified or is harmless." *See also OFS Fitel, LLC v. Epstein, Becker & Green, P.C.*, 549 F.3d 1344, 1363 (11th Cir. 2008). BPI offers no substantial justification for its untimely disclosure of either report, which will suffice to warrant exclusion. *See Williamson Oil Co. v. Philip Morris USA*, 346 F.3d 1287, 1323 (11th Cir. 2003) (citations omitted) (finding that the untimely disclosure of an addendum

---

[4] This is not BPI's first instance of failing to meet case deadlines. (*See* Doc. Nos. 137, 184, 222).

6

to an expert report alone sufficed for rejecting its admission). Additionally, the untimely disclosures, near the close of discovery, were not harmless. Lesser sanctions than striking and excluding the testimony are unavailable, without imposing on Arch the burden of deposing Mr. Schenavar, Ms. Koslik, and Mr. Calaci at this late stage of the case. *See Weaver v. Lexington Ins. Co.*, No. 8:05-CV-1913-T-27TBM, 2007 WL 1288759, at *3 (M.D. Fla. May 2, 2007). While a deposition may cure any prejudice to Arch because of the late disclosure, Arch "was entitled to rely on the court imposed deadlines and hold [BPI] to them." *Id.* at *3 n.2. Thus, the reports and testimony of Mr. Schenavar, Ms. Koslik, and Mr. Calaci will be excluded.

### B.   One Call, Southeastern Capital, World One, Cotton, and N&J

Turning to the remaining motions, Arch moves to strike and exclude One Call's expert testimony and its two reports (Doc. Nos. 142-1, 142-2); Southeastern Capital's expert testimony and report (Doc. Nos. 143-1, 143-2, 143-3); World One's expert testimony, Moisture Report (Doc. 144-1), and Estimates Report (Doc. Nos. 144-2, 144-3); and the expert testimony related to the Cotton Report (Doc. 145-1) and N&J Report (Doc. 145-2). Arch argues BPI violated Rule 26(a)(2)(B)(i) deadlines for these purported experts and that the preliminary disclosures were deficient and did not meet the admissibility standards. In its Response (Doc. 151), BPI argues the experts are hybrid witnesses and need only adhere to Rule 26(a)(2)(C). BPI fails to address Arch's *Daubert* arguments.

Hybrid witnesses provide both fact and opinion testimony grounded in their scientific, technical, or specialized knowledge. *Pediatric Nephrology Assocs. of S. Fla. v. Variety Child.'s Hosp.*, No. 1:16-cv-24138-UU, 2017 WL 5665346, at *4 (S.D. Fla. Nov.

6, 2017) (citation omitted). Here, the witnesses all examined the property around the time of the alleged damage and before the filing of this litigation. Arch has offered no evidence that these were experts retained for or in anticipation of litigation. Additionally, except for N&J, these witnesses were disclosed in BPI's Initial Disclosures.[5] (Doc. 151-1 at 3). Thus, the Court is satisfied these witnesses are hybrid witnesses.

Hybrid witnesses may only testify on "their observations based on personal knowledge as well as their lay opinions, consistent with Rule 701, when such opinion testimony is based upon the witness' experience as a professional and is helpful in understanding the witness' decision making process." *Kaplan v. Kaplan*, No. 2:10-cv-237-FtM-99SPC, 2012 WL 1660605, at *2 (M.D. Fla. May 11, 2012) (citation omitted). A non-retained hybrid witness need only comply with Rule 26(a)(2)(C) and disclose the subject matter and "a summary of the facts and opinions to which the witness is expected to testify." *Pediatric Nephrology Assocs.*, 2017 WL 5665346, at *4 (citation omitted); Fed. R. Civ. P. 26(a)(2)(C). No written report is necessary. Fed. R. Civ. P. 26(a)(2)(C). While the Rule 26(a)(2)(C) requirements are less stringent than the expert report requirement, a single paragraph of facts and opinions falls "brutally short of satisfying Rule 26(a)(2)(C)(ii)." *Ruckh v. CMC II LLC*, No. 8:11-cv-1303-T-23TBM, 2016 WL 7665191, at *3 (M.D. Fla. Dec. 21, 2016).

Having reviewed the relevant disclosures and reports, the Court finds that they meet the Rule 26(a)(2)(C) standard. To the extent that the reports and disclosures were not sufficient, the shortcomings are harmless. In determining if the disclosure is harmless,

---

[5] While BPI's failure to disclose N&J in its Initial Disclosures might be a ground for exclusion as a fact witness, that issue has not been brought before the Court.

the court considers the following factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Woienski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342, 1345 (M.D. Fla. 2019) (citation omitted). "Where the opponent of the proffered expert fails to either attempt to resolve the defective expert report in good faith or fails to move for an order requiring a more detailed response under Rule 26, that party cannot be heard to complain of prejudice." *Id.* (citations omitted).

The majority of these witnesses were disclosed in BPI's initial disclosures, and all of the witnesses were disclosed by BPI's expert disclosure deadline. Despite this, and despite knowing that the condition of the property immediately following Hurricane Irma would be a significant issue in this litigation, Arch never sought an order compelling BPI to cure the allegedly inadequate disclosures. Arch possessed the ability to cure any "surprise" of the expert testimony, which should have been very little given BPI's Initial Disclosures, but chose not to exercise its rights. This is problematic. *See Rementer v. United States*, No. 8:14-CV-642-T-17MAP, 2015 WL 5934522, at *6 (M.D. Fla. Oct. 9, 2015) (finding that the failed disclosure was harmless when the party did not earlier request relief from the court). Additionally, Arch has not provided any justification for its failure to seek adequate disclosures. Thus, these witnesses will not be excluded from providing opinion testimony under Rule 26.

Nevertheless, it is the Court's role to act as gatekeeper to ensure each party meets the Rules of Evidence requirements and that all expert testimony is both relevant and

reliable. *Daubert*, 509 U.S. at 589. In looking at hybrid witnesses, the Court must ensure it is not allowing a wolf in sheep's clothing—that is, a party may not simply proffer an expert as a lay witness. *Williams*, 644 F.3d at 1317. The hybrid witness's testimony can sometimes go beyond an account of their own experience "and purport to provide explanations of scientific and technical information not grounded in their own observations and technical experience[,]" creating evidentiary issues. *Id.* at 1316–17. However, when this occurs, the district court must determine whether the testimony not rooted in their professional experience meets the expert testimony evidentiary standards. *Id.* at 1317. Put plainly, if the testimony is based on a hypothesis rather than the experience of treating the particular problem, "it crosses the line from lay to expert testimony" and "must comply with the requirements of Rule 702 and the strictures of *Daubert*." *Id.* at 1317–18.

1. *One Call*

Arch argues One Call's expert is unqualified to testify on causation and uses an unreliable methodology, rendering the testimony inadmissible under Federal Rule of Evidence 702 and *Daubert*. Wilberto Velez, a Florida State Certified Roofing Contractor, inspected the roof of the M Hotel on December 11, 2017. (Doc. 142-1 at 1). At that time, he opined that "[t]he roof has absolutely no life left," and "all causes of the roof leaks/damages/deterioration were due to Hurricane Irma[.]" (*Id.*). Mr. Velez, in his capacity as a Florida State Certified Electrical Contractor, also inspected the electrical system and hotel rooms on January 3, 2018, and concluded the storm damaged the electrical system and exterior lights. (Doc. 142-2 at 1–2). Aside from these conclusory statements, the Court has little more information before it to assess the admissibility of Mr. Velez's testimony.

The reports fail to support the reasons for their opinions or show the facts, data, or methodology to support Mr. Velez's conclusions. Furthermore, BPI's Response and Sur-Reply address none of Arch's arguments about the *Daubert* standard, leaving this Court to treat the *Daubert* aspects of the One Call Motion as unopposed. *Strickler v. Walmart, Inc.*, No. 2:18-cv-781-FtM-38MRM, 2020 WL 2308306, at *2 (M.D. Fla. May 8, 2020). While a hybrid witness may not have to provide a written report to pass Rule 26 muster, to the extent that the witness seeks to offer expert testimony, he must still be deemed admissible under *Daubert*. *See Kaplan*, 2012 WL 1660605, at *2. The party offering the expert witness must lay the foundation for the testimony's admissibility and satisfy admissibility requirements by a preponderance of the evidence. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010) (citation omitted); *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).

BPI does not elaborate on Mr. Velez's background or training other than stating he works as a certified roofing contractor. This lone fact is not enough to qualify him as an expert, without more information about how his qualifications fit with his opinions. *See Bachmann v. Hartford Fire Ins. Co.*, 323 F. Supp. 3d 1356, 1359 (M.D. Fla. 2018) (citation omitted). While Mr. Velez may well be qualified to testify as an expert or hybrid witness, BPI has fallen far short of laying the foundation of the admissibility of his expert opinions. This Court cannot determine whether Mr. Velez's expert conclusions are anything more than speculation—opinions that cannot reach the jury. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). Without more from BPI, this Court, as

gatekeeper, cannot allow Mr. Velez to provide expert testimony. Thus, the One Call Motion will be granted in part to exclude One Call's expert testimony.[6]

### 2. Southeastern Capital

Arch's Southeastern Capital Motion (Doc. 143) follows the same logic as the One Call Motion and aims to dismiss Southeastern Capital's expert report (Doc. Nos. 143-1, 143-2, 143-3) and testimony because the witness is unqualified, the methodology is unreliable, and the estimates are unhelpful.

In its Rule 26 Initial Disclosures, BPI did not identify a specific individual to offer testimony on behalf of Southeastern Capital. (Doc. 151-1 at 3). Besides sending Mr. Bass an e-mail about visual, audio, and lighting estimates, (Doc. 143-1 at 16), Alexander Juras is not identified in the relevant report or listed as the author of the report. The nearly five-hundred page document consists almost entirely of repair estimates, without analysis, and fails to suggest any relationship to Hurricane Irma or this case. Despite this lack of support for the admissibility of any expert opinion by Southeastern Capital, BPI has once again failed to oppose any portion of Arch's *Daubert* analysis. As gatekeeper, the Court cannot allow Mr. Juras's expert testimony at trial without more of a foundation, which BPI was required to provide. Thus, the Southeastern Capital Motion will be granted in part to exclude Mr. Juras's expert testimony.

---

[6] To the extent that Arch also requests that the Court strike the expert reports, expert reports are generally inadmissible as evidence at trial. *See Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F. Supp. 3d 1143, 1144 (M.D. Fla. 2019) ("[E]xpert reports are inadmissible hearsay[.]"). Arch has not argued or presented evidence that any of the proffered witnesses will be unavailable at trial. Accordingly, its requests to exclude the written reports are premature. Arch may renew its objections at trial, if appropriate.

### 3. World One

Arch moves to exclude World One's testimony, Moisture Report (Doc. 144-1), and Estimates Report (Doc. Nos. 144-2, 144-3) from this case because the witness is unqualified and his methodologies are unreliable. BPI again does not oppose the World One Motion as it pertains to the *Daubert* standard.

Special Projects Manager David W. Pierce ostensibly wrote the summary in the Moisture Report, (Doc. 144-1 at 1–8), and compiled the moisture readings between September 23–28, 2017, (*id.* at 9–108), but nothing in the record suggests this other than his name, title, licenses, and contact information appearing on one page of the report. (*Id.* at 108).[7] The Moisture Report concludes that the water damage and moisture intrusion are storm related and that the roof suffered high winds from a hurricane. (*Id.* at 6). The report also concludes hydrostatic pressure caused the majority of the moisture intrusion within the hotel. (*Id.* at 8).

Mr. Pierce's title and licenses, while impressive, do not offer insight on his "skill, experience, training, or education" providing him with "scientific, technical, or other specialized knowledge" to help the jury determine the cause of the hotel's damage. Fed. R. Evid. 702(a). Mr. Pierce did not disclose what facts or data he used to conclude wind and rain from Hurricane Irma damaged the roof and caused water intrusion. (Doc. 144-1 at 6–7). There is a disconnect in the fit between Mr. Pierce's qualifications and his causation opinions on hydrostatic pressure, water intrusion, and roof damage. Additionally, a "visual examination of the building, without any knowledge of the

---

[7] BPI did not disclose a specific person who will act as World One's expert in its Rule 26 Initial Disclosures. (Doc. 151-1 at 3–4).

13

building[']s prior condition or knowledge of the wind speeds the building was subjected to, is not a sufficiently reliable methodology to allow [Mr. Pierce] to provide an expert opinion as to the cause of the roof damage." *Greater Hall Temple Church of God v. S. Mut. Church Ins. Co.*, No. 2:17-cv-111, 2019 WL 4147589, at *11 (S.D. Ga. Aug. 30, 2019), *objections overruled,* No. 2:17-CV-111, 2020 WL 1809747 (S.D. Ga. Jan. 13, 2020), *aff'd in part, rev'd in part on other grounds,* 820 F. App'x 915 (11th Cir. 2020). Despite the lack of evidence supporting its proffered expert in the record, BPI has failed to provide any additional evidence that would permit this Court to determine that World One may offer expert opinions under *Daubert*. Accordingly, World One will also be excluded from providing expert testimony at trial.

        4.     *Cotton and N&J*

Last, Arch addresses the qualifications, methodologies, and helpfulness of Nathan Franses, author of the Cotton Report (Doc. 145-1), and Oscar Caicedo, author of the N&J Report (Doc. 145-2). BPI again does not address Arch's arguments in its Response.

The Cotton Report summarizes the visual roof inspection conducted on October 12, 2017. Mr. Franses, Roofing Project Coordinator, appears to have drafted the summary. (Doc. 145-1 at 4). The four-page Cotton Report includes fifteen photos and contains three paragraphs discussing factual conclusions about leaks, water intrusion, wind damage, gravel ballast displacement, flying debris, and roof removal allegedly "endured during the hurricane." (*Id.* at 1). In his "professional opinion[,]" Mr. Franses recommended "complete replacement" of the roof to remedy the damage caused by Hurricane Irma. (*Id.*). The Court cannot determine, based on this information alone, that Mr. Franses is qualified to offer expert opinions under *Daubert*. The Report fails to state

his qualifications or the facts and methods used to reach his conclusions, and BPI has failed to respond or provide additional support for its proffered expert. Therefore, Cotton will also be excluded from providing expert testimony at trial.

Lastly, the N&J Report is one page and appears to be authored by Oscar Caicedo, a certified pool and spa operator. (Doc. 145-2 at 1–2). Again, the report fails to provide the necessary information for this Court to conduct a *Daubert* analysis, and BPI has not offered any additional support for its witness. Thus, N&J will not be permitted to offer expert testimony at trial in this matter.

## IV.   CONCLUSION

It is **ORDERED** and **ADJUDGED** as follows:

1. Arch's Motion to Strike and Exclude the Purported Expert Opinions of One Call Construction Services, Inc. (Doc. 142) is **GRANTED in part** to exclude One Call's expert testimony. The Motion is otherwise **DENIED**.

2. Arch's Motion to Strike and Exclude the Purported Expert Opinions of Southeastern Capital of Orlando, Inc. (Doc. 143) is **GRANTED in part** to exclude Southeastern Capital's expert testimony. The Motion is otherwise **DENIED**.

3. Arch's Motion to Strike and Exclude the Purported Expert Opinions of World One Investments, LLC (Doc. 144) is **GRANTED in part** to exclude World One's expert testimony. The Motion is otherwise **DENIED**.

4. Arch's Motion to Strike and Exclude the Purported Expert Opinions of (A) Cotton Construction and Roofing, and (B) N&J Pool Services (Doc. 145) is

>    **GRANTED in part** to exclude Cotton and N&J from providing expert testimony and is otherwise **DENIED**.
>
> 5. Arch's Motion to Strike and Exclude the Purported Expert Opinions of Derek H. Schenavar (Doc. 146) is **GRANTED**.
>
> 6. Arch's Motion to Strike and Exclude the Purported Expert Opinions of Rocco Calaci and Nance Koslik (Doc. 147) is **GRANTED**.
>
> **DONE AND ORDERED** in Orlando, Florida on October 1, 2020.

_____
WENDY W. BERGER
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record